IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILSON GORRELL,
       Plaintiff
   v.
JOHN YOST, WARDEN, F.C.I.
LORETTO, et al.,
       Defendants

Case No. 3:11-cv-13-KRG-KAP

## Order, Report and Recommendation

### Order and Recommendation

Defendants' motion to dismiss, docket no. 15 and docket no. 25, should be granted. Plaintiff's motion for extension of time to file a response to the motion to dismiss, docket no. 19, is denied as moot because he filed his response at docket no. 22 and docket no. 27. Plaintiff's latest motion for counsel, docket no. 21, is denied for the same reason as all previous ones: Local Civil Rule 10(c) provides that "[a]bsent special circumstances, no motions for the appointment of counsel will be granted until after dispositive motions have been resolved," and there are no special circumstances here. Plaintiff's motion for leave to proceed with discovery, docket no. 24, is denied as meritless because: 1) plaintiff did not need permission to conduct discovery, and 2) there is no need to conduct discovery in a dismissed action.

### Report

Plaintiff Gorrell was imprisoned at F.C.I. Loretto, in Loretto, Pennsylvania, from May 2006, to February 2010, when he was transferred to F.C.I. Jesup, in Jesup, Georgia. While at Loretto, Gorrell filed a habeas corpus petition, Gorrell v. Yost, Case No.

3:09-cv-250-KRG-KAP (W.D.Pa. November 18, 2010), aff'd No. 10-4674 (3d Cir. May 3, 2011)(per curiam), petition for rehearing en banc denied (3d Cir. May 25, 2011), seeking credit against his sentence for time in custody allegedly not properly accounted for by the Bureau of Prisons. That petition was denied on the merits; the Court of Appeals summarily affirmed on the merits, remarking that the appeal "did not present a substantial question." Gorrell also filed an FTCA complaint at Gorrell v. United States, Case No. 3:11-cv-8-KRG-KAP (W.D.Pa. March 27, 2012), attempting to allege that various employees of the Bureau of Prisons violated his rights by designating him to Loretto and by not transferring him from Loretto sooner. That complaint was dismissed on defendants' motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. There was no appeal.

The instant complaint, docket no. 6, as supplemented, docket no. 10, contains four claims: 1) that various employees of the Bureau of Prisons changed Gorrell's work assignment from morning shift to day shift while he was at Loretto in September 2009 "in retaliation" for Gorrell filing administrative grievances; 2) that various employees of the Bureau of Prisons applied a Management Variable of Greater Security to Gorrell's classification "in retaliation" for Gorrell filing the FTCA claim in January 2010, which caused Gorrell not to be transferred to F.C.I. Morgantown and led instead to Gorrell being transferred to Jesup; 3) that various

employees of the Bureau of Prisons transferred Gorrell from Loretto to Jesup in January 2010, in order to interfere with his ability to litigate the habeas corpus action at Gorrell v. Yost, Case No. 3:09-cv-250-KRG-KAP; and 4) that various employees of the Bureau of Prisons opened or otherwise mishandled several pieces of Gorrell's mail between February and April 2010, after Gorrell's transfer from Loretto to Jesup.

The defendants assert several defenses that may also be valid (failure to exhaust, qualified immunity), but it is simpler to dispose of the complaint on its merits.

An inmate's "retaliation" cause of action stems from Rauser v. Horn, 241 F.3d 330, 334 (3d Cir.2001), and Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003): an inmate must allege facts that allow a plausible inference (1) that the inmate took some action itself protected by the constitution; (2) that a defendant took adverse action against the inmate sufficient to deter a person of ordinary firmness from persisting in his conduct; and (3) that the inmate's protected conduct caused the defendant's adverse action.

An inmate's "right of access to court" cause of action is derived from a line of cases following Bounds v. Smith, 430 U.S. 817 (1977), variously describing the right either as flowing from the First Amendment's right to petition for redress of grievances, or as an aspect of due process, see Lewis v. Casey, 518 U.S. 343,

366-67 (1996) (Thomas, J., concurring). A cause of action is stated by alleging that a particular defendant: 1) interfered with; 2) a nonfrivolous attack on conditions of confinement, or the defense against a criminal charge, a direct appeal from or collateral attack on a criminal conviction, or a habeas corpus petition. See Lewis v. Casey, 518 U.S. at 353 n.3 and 355. As the Supreme Court made clear in Lewis v. Casey, a plaintiff must prove (or for purposes of a complaint, allege) some relevant actual injury. In the case of allegedly inadequate access to a library:

> [An inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

518 U.S. at 351. In other words, to satisfy Fed.R.Civ.P. 8 and survive a motion under Rule 12(b)(6), the inmate must allege some legal loss.

An inmate's claim based on opening or mishandling of mail is governed by two lines of cases from the Court of Appeals, one dealing with systemic problems, and the other dealing with individual complaints. For official policies that allegedly interfere with mail, Jones v. Brown, 461 F.3d 353, 359 (3d Cir.2006), cert. denied, 549 U.S. 1286 (2007), suggests that a blanket practice of opening inmate legal mail outside the presence of the inmate "impinges upon" the First Amendment. Jones v. Brown

4

was modified by <u>Fontroy v. Beard</u>, 559 F.3d 153 (3d Cir.2009), that held Pennsylvania Department of Corrections' DC-ADM 803 mail control policy to be valid. In the absence of the sort of blanket policy at issue in <u>Jones v. Brown</u> and <u>Fontroy v. Beard</u>, the settled law is given by <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir.1997): an inmate has no First Amendment claim for improper opening of mail unless the opening of the mail had an adverse impact on the inmate's access to court. <u>Oliver v. Fauver</u> overruled <u>Bieregu v. Reno</u>, 59 F.3d 1445 (3d Cir.1995), on which Gorrell relies.

Gorrell's first claim, attempting to state a retaliation claim, fails because the "adverse action" plaintiff alleges is legally and factually trivial, and cannot constitute action sufficient to deter a person of ordinary firmness from persisting in his protected conduct. Accepting Gorrell's allegations entirely would cause the court to believe that defendants change of Gorrell's job designation was "intended to impede the Plaintiff's use of the Law Library," docket no. 22 at 1. This impeding, however, consisted solely of placing the library off-limits to Gorrell (unless Gorrell asked for special permission, a possibility unexplored by Gorrell that all by itself renders Gorrell's claim meaningless) during the day shift from 7:30 a.m. to 3:25 p.m. This left Gorrell free (without seeking special permission) to use the library on evenings and weekends, which Gorrell himself calculates was 39% of the time the library was open. docket no. 6, Complaint

5

at ¶33. Gorrell does not allege that this diminution in the hours that he could spend in the library had any effect on any legal work Gorrell was pursuing on his own behalf.

Gorrell's failure results from his misunderstanding of the relationship between part one (protected activity) and part two (substantial interference with the protected activity) of the three-part cause of action. Gorrell alleges, Complaint at ¶¶33-40, that the diminution of his time in the law library impeded two alleged constitutional rights: 1) to be in the law library whenever he wants to; and 2) to act as a jailhouse lawyer on behalf of other inmates. Gorrell has no such rights, see Shaw v. Murphy, 532 U.S. 223, 231 (2001), and defendants cannot be liable for impeding activity Gorrell has no right to.

Gorrell's second claim is in a curious way a Bivens action mutation of the FTCA complaint. Gorrell's criminal prosecutions in the District of Columbia and in the Southern District of New York are outlined in the habeas corpus petition and in the FTCA action. Gorrell complains that after his sentencing in 2006, he was designated to Loretto rather than F.C.I. Morgantown, the minimum security prison he preferred, due to a management variable of greater security being applied because of Gorrell's failure to appear in the District of Columbia in 2004. Defendants agree with that allegation. See docket no. 16-12, Exhibit 1k. Although Gorrell correctly notes that he was not

separately prosecuted for his failure to appear, Gorrell does not and cannot claim that he did not in fact fail to appear in 2004 while on pretrial release. The general rule is that, except for the case of extreme conditions of confinement, see Wilkinson v. Austin, 545 U.S. 209 (2005) (holding that a challenge to the procedure used to transfer inmates to supermax prison was cognizable under Due Process Clause, but ruling against the challenge on the merits), a duly convicted prisoner has no federally enforceable right to be confined in any particular prison, Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976), or at any particular custody level within a prison, Sandin v. Conner, 515 U.S. 472, 486 (1995). But Gorrell cannot even allege that the management variable was improperly applied to him.

However, according to Gorrell, the management variable can only be applied for up to 24 months, Complaint at ¶14, and therefore should have expired in 2008. Gorrell repeats this assertion over and over and over again. Repetition does not make an error into a maxim: as even the paralegal to whom Gorrell wrote for advice advised Gorrell in June 2009, docket no. 6-1, Appendix to Complaint at 224, the fact that the relevant Bureau of Prisons Program Statement 5100.08, see e.g. docket no. 6-1, Appendix to Complaint at 149, permits a management variable of greater security to be applied for "up to 24 months" is a condition on how often the

7

management variable (and therefore an inmate's custody level) must be reviewed, not a limit on the total time that the management variable can be applied to an inmate. It appears that Gorrell's status was reviewed at least every 24 months, usually every year. After Gorrell was designated to Loretto in May 2006, renewal of the management variable was sought first in August 2007, docket no. 16-23, Exhibit 2e, and then again in August 2008 (approved in October 2008), docket no. 16-24, Exhibit 2f; see also docket no. 6-1, Appendix to Complaint at 97-100, 129, 237. Although Gorrell alleges that the 2007 renewal took place in July, Complaint at ¶15, the difference is not significant.

In December 2009, defendant Yost noted, in a memo also signed by defendant Brodmerkel and defendant Auman, that the management variable had expired (apparently in October 2009, docket no. 6-1, Appendix to Complaint at 222) and Gorrell's security level had decreased to minimum, and Yost recommended a transfer to Morgantown, a minimum level facility. docket no. 16-25, Exhibit 2g. On January 21, 2010, the management variable was re-applied for another year by an employee at the DSCC ("DSC/MBR"), who the parties appear to agree was defendant Mariblanca Rodriguez-Schramm, and Gorrell was transferred to Jesup, like Loretto a low security facility. docket no. 16-13, Exhibit 11.

Gorrell arrived at Jesup in March 2010. In October 2010, a request at Jesup to lower Gorrell's security classification was

8

rejected and the management variable was applied again by an employee at the DSCC. docket no. 16-26, Exhibit 2h.

Gorrell filed his FTCA administrative claim on January 9, 2010. Complaint at ¶47. His second cause of action in essence asserts that by January 21, 2010, counsel for the Bureau of Prisons contacted the defendants employed at Loretto, who thereby learned of his FTCA administrative claim. Within that same twelve days, those defendants allegedly contacted the DSCC and persuaded defendant Rodriguez-Schramm to improperly reapply the management variable, and arrange to transfer Gorrell to Jesup, in order to "suppress" Gorrell's FTCA action. Complaint at ¶48, ¶55. (It is not clear how the transfer could have suppressed his FTCA action or how a transfer to any other facility would not have had the same effect. And as noted above, the FTCA action was not suppressed in any way.)

Gorrell was advised of his transfer on January 26, 2010, Complaint at ¶58, and actually left Loretto about February 18, 2010, Complaint at ¶19, and arrived in Jesup in late March 2010. Gorrell, despite voluminous correspondence, nonetheless never complained to anyone that Jesup was not where he thought he was going until 2011, when he filed this complaint. Gorrell's correspondence transmitting his FTCA claim, makes it clear that he had already been aware that he was going to be transferred, see e.g. docket no. 16-10, Exhibit 1i at 2, letter dated January 9,

9

2010: "In addition, if you need to contact me for any reason, please verify my location before doing so, I expect to be transferred shortly to another facility; but as you know, I will not be made aware of which facility beforehand."

Gorrell would argue that the retaliation results from the fact that Jesup is much farther from his home (Baltimore, Maryland) than is Loretto. This requires the assumption of several missing facts: that there was a transfer in the works to some other location, that defendants Yost, Brodmerkel, and Auman, who only a month previously had recommended that Gorrell be transferred to Morgantown, managed to contact Rodriguez-Schramm, had her re-apply an improper management variable, and got Gorrell transferred to Jesup.

Additionally, there is an obvious inconsistency between Gorrell's assertions in the Bivens action and the FTCA claim: in the FTCA claim the liability of the government was premised upon the claim that Yost, Brodmerkel, and Auman were attempting to hold Gorrell at the allegedly unsuitable facility at Loretto, while in this Bivens action the liability of the individual defendants Rodriguez-Schramm, Yost, Brodmerkel, and Auman is premised on the very fact that they transferred Gorrell from Loretto. It would be senseless to have a legal regime that would impose liability on the government or prison officials no matter which course of action the prison officials took.

In the end Gorrell's second claim boils down to the assertion that Yost, Brodmerkel, and Auman, individual employees of the Bureau of Prisons who are sued as individuals in this court several times each year, and who already had been the subject of a threatened <u>Bivens</u> action by Gorrell over the law library incident, and who nevertheless recommended Gorrell's transfer to Morgantown, were within the week of Gorrell's filing of the FTCA claim contacted by the Bureau of Prisons' counsel and so inflamed by Gorrell's filing of the administrative claim (a prerequisite to filing an FTCA complaint that would not even if successful have cost them a dime) that they contacted Rodriguez-Schramm and had a favorable transfer canceled and the retaliatory transfer to Jesup engineered, all without leaving a trace. Why would they do this to an inmate who, after almost four years with nothing more controversial than a change in job shifts, was going to be out of their hair? Because the FTCA administrative claim inflamed them like nothing else in the previous four years. And how could they accomplish this? Why, by the imposition on Gorrell of the same management variable that had been imposed (despite Gorrell's assertion to the contrary, properly imposed) three times previously and that was imposed once (or twice) subsequently.

I cannot say that the above sequence of events would be metaphysically impossible, assuming plaintiff were to amend his complaint to supply the missing allegations. But the test for

11

adequacy of a complaint is plausibility, and Gorrell's second claim is simply implausible.

Gorrell's third and fourth claims are related, and fail for related reasons: even if every allegation of interference Gorrell makes were accepted as true, Gorrell does not allege and cannot allege any legal loss was caused by any alleged action of any defendant. His habeas corpus petition was decided on its merits, and so was his FTCA claim. Gorrell does not even suggest that there was an additional action he has been prevented from filing. Furthermore, the concept of legal loss, as applied to claims of denial of access to court, must take into account what remedies are available: if Gorrell actually had suffered loss from interference with filing something in the habeas petition or FTCA action he could have moved (or could move) for relief under Fed.R.Civ.P. 60. And supposing Gorrell were to allege that he had been prevented from exhausting administrative remedies within the Bureau of Prisons or filing a civil complaint in a court, that interference would either excuse the exhaustion or toll running of the limitations period. No legal claim can accrue while an inmate has a viable remedy for alleged interference that he has not even attempted to use, because the inmate has not yet suffered any legal injury from the alleged interference. To allow an inmate to bypass available remedies for the sake of filing a new complaint would be a foolish waste of judicial resources. Or, as Justice Souter put

it in <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002), "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."

The complaint should be dismissed without further leave to amend.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: July 18, 2012

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Wilson Gorrell, Reg. No. 56609-054
Federal Satellite Low
2600 Highway 301 South
Jesup, Georgia 31599